1
2
3
4
5
6
7        IN THE UNITED STATES DISTRICT COURT FOR THE
8              EASTERN DISTRICT OF CALIFORNIA
9

10 TAYLOR GUNDY,               CASE No. 1:12-cv-01020-LJO-MJS

11                       FINDINGS AND RECOMMENDATIONS

          Plaintiff,            THAT DEFENDANTS' MOTIONS FOR
12                       PARTIAL DISMISSAL BE GRANTED

13    vs.                   (ECF Nos. 15, 27)

14                       OBJECTIONS DUE WITHIN
   CALIFORNIA DEPARTMENT OF      FOURTEEN (14) DAYS
15 CORRECTIONS &
   REHABILITATION, et al.,
16

17          Defendants.

18 _____/

19 **I.**   **PROCEDURAL HISTORY**

20      Plaintiff Taylor Gundy, a former state prisoner, initiated this action on June 21,

21 2012 pursuant to 42 U.S.C. Section 1983. (Compl., ECF No. 1.) This matter proceeds

22 on Plaintiff's First Amended Complaint filed October 5, 2012. (First Am. Compl., ECF

23 No. 11.)

24      In the First Amended Complaint, Plaintiff alleges Eighth Amendment medical

25 indifference, state law medical malpractice, and state law failure to obtain medical

26 attention. His claims arise out of Defendants' alleged failure to treat internal fixation

27

28                -1-

1   hardware that erupted through the skin of his left ankle while he was incarcerated at

2   Kern Valley State Prison ("KVSP"), ultimately resulting in staph infection, amputation of

3   his left ankle joint, disfigurement and disability. (Id. at ¶ 1.)

4       Plaintiff names as Defendants (1) the California Department of Corrections and

5   Rehabilitation ("CDCR"); (2) Sherry Lopez, Chief Medical Officer at KVSP; (3)

6   Christopher Horton, Registered Nurse at KVSP; (4) Adriana Arambula, Physician's

7   Assistant at KVSP; (5) Young Nam Paik, M.D., private physician contracted to KVSP;

8   (6) Pacific Orthopedic Medical Group, a private entity employing Defendant Paik

9   ("Pacific Orthopedic"); and (7) DOES 1-50, employees and/or agents of KVSP and

10  CDCR. (Id. at ¶¶ 8-15.)

11      Plaintiff seeks compensatory and punitive damages, medical expenses,

12  attorneys fees, costs, and interest. (Id. at 28:4-15.)

13      Defendants Paik and Pacific Orthopedic filed their Answer to the First Amended

14  Complaint on November 16, 2012. (Ans. Paik and Pacific Orthopedic, ECF No. 23.)

15      On October 26, 2012, Defendants CDCR and Lopez filed a Motion for Partial

16  Dismissal of this action (CDCR/Lopez Mot. Dismiss., ECF No. 15), asserting as

17  grounds (1) the CDCR is immune from suit in federal court and (2) Plaintiff's state tort

18  claims can not be litigated because they were not timely presented. (CDCR/Lopez

19  Notice Mot. Dismiss. at 2:3-5.)

20      Plaintiff filed Opposition to the CDCR/Lopez Motion on November 16, 2012.

21  (Opp'n CDCR/Lopez Mot. Dismiss., ECF No. 24.)

22      Defendants Arambula and Horton filed a Motion for Partial Dismissal of this

23  action on November 20, 2012 (Arambula/Horton Mot. Dismiss, ECF No. 27), likewise

24  asserting as grounds that state tort claims were not timely presented.

25  (Arambula/Horton Mot. Dismiss. at 1:28-2:2.)

26      Plaintiff filed Opposition to the Arambula/Horton Motion on December 28, 2012.

27

28                          -2-

1   (Opp'n Arambula/Horton Mot. Dismiss., ECF No 31.)

2        Defendants filed a Reply to the Opposition on January 11, 2013. (Reply, ECF

3   No. 32.)

4        The January 18, 2013 hearing was vacated and the matter taken under

5   submission. (Order Vacating, ECF No. 33.) All pending motions for dismissal are now

6   before the Court.

7   **II.    SUMMARY OF FIRST AMENDED COMPLAINT**

8        Plaintiff alleges that Defendants Lopez, Horton, Arambula, Paik and DOES 1-50

9   were wantonly indifferent and negligent; Defendants CDCR, Lopez, Horton, Arambula,

10  Paik and the DOES violated a state law duty by wantonly failing to immediately

11  summon medical care; and Defendant Pacific Orthopedic was wantonly negligent in

12  training and supervising Defendant Paik. (First Am. Compl. at 16:10-27:28.)

13       On November 8, 2009, as the result of a motor vehicle accident, Plaintiff's left

14  ankle was surgically reconstructed with internal fixation hardware.[1] (Id. at ¶ 16.) On

15  November 12, 2009, Plaintiff was taken into custody at Los Angeles County Men's

16  Central Jail. Plaintiff arrived at KVSP on March 26, 2010 (Id. at ¶ 18) and requested,

17  per the advice of his original surgeon, an ankle brace and bone growth stimulator. (Id.

18  at ¶ 53.) These requests were ignored. (Id.) Plaintiff's  April 28, 2010 medical appeal of

19  the issue was similarly ignored until September 20, 2010, and then it was denied. (Id.

20  at  ¶ 55.)

21       On June 29, 2010, Plaintiff informed DOE Defendant(s) that one of the surgical

22  screws had torn through the skin of his left ankle, unraveling the fixation cabling and

23  exposing surgical thread. (Id. at ¶ 21.) Plaintiff requested immediate medical

24  assistance. (Id. at ¶ 23.) He was seen by a DOE medical staff member on July 2,

25

26  ───────────────

27  [1] A plate, two cables, and ten screws were affixed internally to Plaintiff's ankle. (First Am. Compl. at ¶ 16.)

28                                         -3-

1   2010. X-rays and tests for infection were ordered. Plaintiff was given ointment and told

2   the screw would have to be removed surgically. (Id. at ¶ 24.)

3       Defendant Paik examined Plaintiff on July 19, 2010, and advised that staph

4   infection was setting in; he recommended to Defendant Lopez that Plaintiff have

5   emergency surgery. (Id. at  ¶ 25.) Defendant Lopez denied this request without

6   explanation. (Id. at ¶ 26.) Plaintiff was told by Defendant Arambula that surgery was

7   denied because of Plaintiff's then-planned November 23, 2010 release date. (Id. at ¶

8   31.) According to Plaintiff, KVSP has a policy and practice of reducing costs by limiting

9   or declining to provide medical care to inmates nearing release. (Id. at ¶ 31.)

10      Plaintiff filed numerous CDCR form requests for treatment over the next several

11  weeks, but received no response. (Id. at  ¶ 30.) His test results were lost. (Id. at ¶ 29.)

12      Plaintiff again saw Defendant Paik on August 30, 2010, the physician again

13  confirmed the staph infection and, Plaintiff believes, he made a second request to

14  Defendant Lopez for emergency surgery. (Id. at ¶¶ 33-34.) On September 2, 2010,

15  Plaintiff had a follow-up visit with Defendant Horton, who agreed that Plaintiff required

16  immediate surgery and who submitted a request for same, but who failed to summon

17  immediate medical care. (Id. at ¶ 36.)

18      Plaintiff underwent surgery on September 22, 2010 for removal of all hardware

19  from his left ankle. (Id. at ¶ 38.) By this time the staph infection had caused joint

20  deterioration. (Id. at ¶ 40.) He was put on an aggressive course of treatment with

21  antibiotics and morphine. (Id. at ¶¶ 42-43.) He was discharged back to KVSP on or

22  about November 19, 2010 (Id. at ¶ 47), where his pain medication was soon

23  discontinued. (Id. at  ¶ 49.) His requests for pain medication were denied until

24  February 2011. (Id. at ¶ 51.)

25      Plaintiff was released from KVSP on July 26, 2011. (Id. at ¶ 57.)

26      Subsequently, he underwent three additional surgeries on his severely

27

28                                              -4-

1   degraded left ankle, including amputation of the left ankle joint, bone fusion, irrigation
2   and debridement, and skin grafting. (Id. at ¶¶ 58-63.) As a result he has great difficulty
3   walking. (Id. at ¶¶ 49, 56, 58.)

4       Plaintiff filed a California governmental tort claim with the Victim Compensation
5   and Governmental Claims Board ("VCGCB") on December 30, 2011. (Id. at ¶ 73.) The
6   VCGCB accepted Plaintiff's claim form only "to the extent it asserts allegations that
7   arise from facts or events which occurred during the six months prior to the date it was
8   presented."[2] The VCGCB rejected those claims on February 16, 2012.[3]

9       Plaintiff filed the instant lawsuit on June 21, 2012.

10  **III.   LEGAL STANDARD**

11      A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency
12  of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the
13  absence of sufficient facts alleged under a cognizable legal theory. Conservation Force
14  v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011). In resolving a 12(b)(6) motion, the
15  Court's review is generally limited to the operative pleading. Daniels-Hall v. National
16  Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910
17  (9th Cir. 2007); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003–04 (9th Cir.
18  2006); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

19      To survive a motion to dismiss, a complaint must contain sufficient factual
20  matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal,
21  556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555
22  (2007). The Court must accept the well-pleaded factual allegations as true and draw all
23  reasonable inferences in favor of the non-moving party. Daniels–Hall, 629 F.3d at 998;
24  Sanders, 504 F.3d at 910, cert. denied, 553 U.S. 1031.

25

26          [2] Exhibit "A" to Plaintiff's Opposition to Motions to Dismiss. (ECF Nos. 24, 31.)

27          [3] Exhibit "B" to Plaintiff's Opposition to Motions to Dismiss. (ECF Nos. 24, 31.)

28

IV.     **ARGUMENTS**

    A.     **Moving Arguments**

        1.     Defendants' CDCR and Lopez

        These Defendants argue that CDCR has Eleventh Amendment immunity from suit in federal court; and that Plaintiff's state tort claims against Defendant Lopez are untimely under California Government Code Sections 900.2, 910, 911.2 and 945.4, because they were was not presented until December 30, 2011, more than six months after Defendant Lopez's decision to delay surgery until September 22, 2010. (CDCR/Lopez P&A's in Supp. at 5:3-6:3.)

        2.     Defendants Arambula and Horton

        These Defendants likewise assert that the state tort claims were not timely presented under California Government Code Sections 900.2, 910, 911.2 and 945.4 because Defendant Arambula told Plaintiff in July 2010 that his request for emergency surgery was denied and it was on September 2, 2010 that Defendant Horton allegedly failed to summon medical care. Plaintiff did not file his tort claim until December 30, 2011, more than six months after these events. (Arambula/Horton P&A's in Supp. at 5:5-23.)

    B.     **Opposition Arguments**

        1.     Eleventh Amendment

        Plaintiff does not oppose CDCR's motion to dismiss on Eleventh Amendment grounds. (Opp'n CDCR/Lopez Mot. Dismiss. at 7 n.1.) Plaintiff voluntarily dismissed all his causes of action against Defendant CDCR on November 16, 2012 pursuant to Fed. R. Civ. P. 41(a)(1)(A)(I). (Notice of Dismissal, ECF No. 25.)

        2.     Procedural Bar to Successive Motions

        Plaintiff argues Defendant Lopez's state claim untimeliness defense is barred by Fed. R. Civ. P. 12(g)(2)'s preclusion of successive pre-answer motions to dismiss.

1   According to Plaintiff, Lopez should have litigated this argument in her first pre-answer

2   motion to dismiss filed against the now superseded Complaint because the Complaint

3   contained allegations nearly identical to the operative First Amended Complaint.

4   Otherwise Plaintiff gets a "second bite at the pre-answer apple." (Opp'n to CDCR/Lopez

5   Mot. Dismiss. at 8:4-14; 2:20-21;13:8-12.)

6                  3.   Discovery Rule

7        Plaintiff argues that his claims against Defendants Lopez, Arambula and Horton

8   did not accrue under California's "discovery rule" until October 2011, after his release

9   from incarceration, when he became aware of the extent of his injuries upon his first

10  post-incarceration surgery. (Id. at 8:21-9:2; Opp'n Arambula/Horton Mot. Dismiss. at

11  11:21-12:12.) At that time, the treating physician told him "his staph infection had not

12  been thoroughly treated during his incarceration at Kern Prison, and that additional

13  surgery was needed to save his left leg from being amputated." (First Am. Compl. at ¶

14  63; Opp'n CDCR/Lopez Mot. Dismiss. at 19:3-11; Opp'n Arambula/Horton Mot.

15  Dismiss. at 12:13-21.)

16                 4.   Continuing Violation

17       Plaintiff argues the failure of Defendants Lopez, Arambula and Horton to

18  summon immediate medical care included ongoing failure to respond to his requests for

19  post-operative orthopedic care, medication, and further surgeries, amounting to a

20  "continuing violation" until his release from KVSP custody on July 26, 2011 (Opp'n

21  CDCR/Lopez Mot. Dismiss. at 9:9-11; 14:16-18:14; Opp'n Arambula/Horton Mot.

22  Dismiss. at 13:21-18:10), such that his December 30, 2011 claim presentation was

23  timely. (Opp'n CDCR/Lopez Mot. Dismiss. at 17:28-18:3; Opp'n Arambula/Horton Mot.

24  Dismiss. at 18:11-18.)

25                 5.   VCGCB Acceptance of Claims as Timely

26       Plaintiff argues the VCGCB accepted his December 30, 2011 state tort claims as

27

28                                        -7-

timely (Opp'n CDCR/Lopez Mot. Dismiss. at 10:1-5; Opp'n Arambula/Horton Mot.

Dismiss. at 9:12-16), then formally rejected these claims on February 16, 2012. (Opp'n

CDCR/Lopez Mot. Dismiss. at  at 10:5-7; Opp'n Arambula/Horton Mot. Dismiss. at 9:16-

18). He also argues that his December 30, 2011 claims included a request to present

late claims pursuant to Cal. Gov't Code § 911.4(a)(b) (Opp'n CDCR/Lopez Mot.

Dismiss. at 20:10-21:14; Opp'n Arambula/Horton Mot. Dismiss. at 19:22-20:5), which

late claims the VCGCB accepted (Opp'n CDCR/Lopez Mot. Dismiss. at 21:14-19; Opp'n

Arambula/Horton Mot. Dismiss. at 20:5), satisfying the state claims presentation

requirements and enabling the instant litigation. (Opp'n CDCR/Lopez Mot. Dismiss. at

21:23-24; Opp'n Arambula/Horton Mot. Dismiss at 20:10-14.)

### 6.   Equitable Tolling

Plaintiff argues that the six month period within which to present his state tort

claims is subject to equitable tolling until his release from KVSP on July 26, 2011. This

is because he reasonably pursued Prison Litigation Reform Act ("PLRA") remedies

seeking medical attention, alleging the same operative facts as the First Amended

Complaint, such that Defendants had knowledge of his tort claims, have not been

prejudiced in their investigation and defense, and Plaintiff could not reasonably have

been aware of the state claims presentation requirement until he consulted with an

attorney upon his release. (Opp'n CDCR/Lopez Mot. Dismiss. at 22:23-23:25; Opp'n

Arambula/Horton Mot. Dismiss. at 21:16-22:17.)

### 7.   Further Leave to Amend

Finally, Plaintiff argues in favor of leave to amend should the Court grant the

Defendants any relief, absent a determination "the pleading could not possibly be cured

by the allegation of other facts." (Opp'n to CDCR/Lopez Mot. Dismiss. at 24: 2-12;

Opp'n Arambula/Horton Mot. Dismiss. at 22:20-23:2.)

///////

-8-

C.     **Reply Argument**

1.     Defendants CDCR, Lopez, Arambula and Horton

Defendants argue:

CDCR's motion to dismiss should be granted because it is unopposed. (Def. Reply at 2:7-10.)

Plaintiff's state tort claims against Lopez, Arambula and Horton arose in September 2010 at the latest. (Id. at 2:14-22.) The December 30, 2011 claims presentation was more than six months after the claims arose and was untimely.[4] (Id. at 2:22-24.)

The actions attributed by Plaintiff to Defendants Lopez, Arambula and Horton were finite, non-continuous actions, and Plaintiff's assertion of "continuous" actions and violations therefrom is baseless. (Id. at 3:6-17.)

The VCGCB did not accept untimely state tort claims occurring more than six months prior to December 30, 2011. (Id. at 3:22-4:4.)

Plaintiff has not demonstrated his lack of knowledge of facts and violations or other impediment to timely claim filing entitling him to equitable tolling. (Id. at 4:6-11.)

The statutory process for permission to file a late claim, Cal. Gov't Code Sections 911.4, 946.6, is the only method for excusing a late claim. Plaintiff did not seek leave to file a late claim. (Id. at 4:15-21.)

**V.     ANALYSIS**

After carefully reviewing the record, the undersigned concludes that Defendant CDCR is immune from prosecution under the Eleventh Amendment and should be dismissed from this action and that Plaintiff's state law claims against Lopez, Arambula and Horton were not timely presented and should be dismissed without prejudice.

---

[4] Cal. Gov't Code § 911.2.

-9-

### A.    Eleventh Amendment Immunity

Defendant CDCR asserts immunity from federal suit.

Plaintiff may not bring suit against the CDCR in federal court because as a state agency, it is entitled to Eleventh Amendment immunity. Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

"Though its language might suggest otherwise, the Eleventh Amendment has long been construed to extend to suits brought against a state by its own citizens, as well as by citizens of other states." Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir. 1991). "The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief is legal or equitable in nature." Id.

Plaintiff does not oppose CDCR's motion for dismissal on grounds of Eleventh Amendment immunity, and has filed a voluntary dismissal of all causes of action against CDCR.

Defendant CDCR should be dismissed from this action.

### B.    Successive Pre-Answer Motions for Dismissal

Defendant Lopez filed a motion to dismiss the now superseded Complaint (Mot. Dismiss, ECF No. 8) but then withdrew the motion because Plaintiff filed a First Amended Complaint. (Notice Withdrawing Mot. Dismiss., ECF No. 13.)

Plaintiff asserts that Defendant Lopez's pending motion is barred pursuant to Federal Rules of Civil Procedure 12(g)(2) because the claim presentation defense was available to her, but not asserted, in her earlier motion.

The law is clear in this Circuit that an "amended complaint supersedes the original, the latter being treated thereafter as nonexistent." Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997), overruled in part on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Courts in this Circuit therefore have

permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available. See In re Sony Grand WEGA KDF–E A10/A20 Series Rear Projection HDTV Television Litig., 758 F.Supp.2d 1077, 1098 (S.D. Cal. 2010) ("When Plaintiffs filed the [first amended complaint], it superseded their previous complaint, and Sony was therefore free to move again for dismissal."); Stamas v. Cnty. of Madera, No. CV F 09–0753 LJO SMS, 2010 WL 289310, at *4 (E.D. Cal. January 15, 2010) ("[A]n amended pleading is a new round of pleadings . . . [and] is subject to the same challenges as the original (i.e., motion to dismiss, to strike, for more definite statement)."); Migliaccio v. Midland Nat'l Life Ins. Co., No. CV 06–1007 CASMANX, 2007 WL 316873, at *2–3 (C.D. Cal. January 30, 2007) (rejecting plaintiffs' argument that Federal Rule of Civil Procedure 12(g)(2)'s ban on successive Rule 12 motions barred the defendants from raising new arguments or resurrecting arguments considered by the court in their first motion to dismiss). The defense of failure to state a claim may be raised at any time before trial. Albachten v. Corbett, 156 F.Supp. 863, 864 (S.D. Cal. 1957). Plaintiff is not barred by Rule 12(g)(2) from asserting Rule 12(b)(6) defenses in her instant motion to dismiss.

Additionally, Rule 12(g) is intended to require consolidation of defenses and thus discourage delay and dilatory tactics. Printing Plate Supply Co., v. Curtis Pub. Co., 278 F.Supp. 642, 644 (E.D. Pa. 1968). There being no indication that Defendant Lopez filed her Motion to delay proceedings, Rule 12(g)'s purpose would not be furthered by its application here. See SCO Group, Inc., v. Novell, Inc., 377 F.Supp.2d 1145, 1150 (D. Utah 2005) (despite consolidation language of Rule 12(g), the court will entertain a second motion to dismiss because it was not interposed for delay, and its consideration will expedite disposition of the case on its merits).

For the reasons stated above, Defendant Lopez's motion should not be barred by Rule 12(g)(2).

### C.   Delayed Accrual - Discovery Rule

Defendants Lopez, Arambula and Horton assert Plaintiff failed to present his state tort claims within six months of accrual, barring litigation of these claims.

The six month period for claim presentation runs from accrual of the cause of action,[5] i.e., the date the claimant's right to sue arises.[6] Shirk v. Vista Unified Sch. Dist. 42 Cal.4th 201, 209 (Cal. 2007).

The general rule sets the date of accrual of a cause of action as the time "when, under the substantive law, the wrongful act is done," or the wrongful result occurs, and the consequent "liability arises . . . ." Norgart v. Upjohn Co., 21 Cal.4th 383, 397-98 (Cal. 1999), citing 3 Witkin, Actions, § 459 at 580. The accrual date is the "time when the cause of action is complete with all of its elements." (Id.; see Neel v. Magana, Olney, Levy, Cathcart & Gelfand 6 Cal.3d 176, 187 (Cal. 1971) ("[I]n ordinary . . . actions, the statute of limitations . . . begins to run upon the occurrence of the last element essential to the cause of action.")

The discovery rule serves to extend the time from which the limitations period starts to run until "the plaintiff knows both the existence and the cause of his injury." Garcia v. Brockway, 526 F.3d. 456, 465, (9th Cir. 2008), citing U.S. v. Kubrick, 444 U.S. 111, 113 (1979). Delayed discovery doctrine "postpones accrual . . . until the plaintiff discovers, or has reason to discover, the cause of action . . . A plaintiff "has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements." Santangelo v. Bridgestone/Firestone, Inc. 2012 WL 6041626, at *1 (9th Cir. December 3, 2012), citing Norgart, 21 Cal.4th at 397-98. "The belated discovery rule protects the plaintiff . . . when, despite diligent investigation, he is blamelessly ignorant of the cause of his injuries. It also protects the defendant, who is spared

---

[5] Cal. Civ. Proc. Code § 911.2.

[6] Cal. Gov't Code § 901.

precipitous litigation." Bastian v. San Luis Obispo County, 199 Cal.App.3d 520, 529 (Cal. Ct. App. 1980).

However, the discovery rule does not delay accrual until the Plaintiff is aware of the full extent of the wrong and his injuries; it is sufficient to start the time running if he knows there has been error and he has suffered a loss as a result. See Pace Industries Inc. v. Three Phoenix Co., 813 F.2d 234, 240 (9th Cir. 1987) (uncertainty as to the extent of damages does not delay accrual); Dyniewicz v. United States, 742 F.2d 484, 486 (9th Cir. 1984) (mere knowledge of the physical cause of injury starts the running of the statute).

### 1.   Medical Malpractice Claims

In a medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Tortorella v. Castro, 140 Cal.App.4th 1, 3 n.2 (Cal. Ct. App. 2006); Hanson v. Grode, 76 Cal.App.4th 601, 606 (Cal. Ct. App. 1999).

The First Amended Complaint shows that Plaintiff was aware, by not later than October 11, 2010, that: his ankle joint was severely displaced; he had a serious staph infection; the infection had eaten through his ankle joint; he might need amputation; he was in serious pain; and, Defendants had refused to summon medical assistance and had denied and delayed emergency surgery. (First Am. Compl. at ¶¶ 21-45.) He also was aware not later than February, 2011 of Defendants' alleged wrongful denial of pre- and post-surgical orthopedic care and pain medication and of the pain and restricted mobility resulting therefrom. (Id. at ¶¶ 44-45, 48-56.)

It thus must be said that by October 2010, and certainly no later than February

1  2011, Plaintiff had reason to suspect facts supporting all elements of his medical claim,

2  i.e. that Defendants' wrongful acts and omissions and refusal to provide recommended

3  medical care caused him significant ankle pain and loss of function. Such mal- and/or

4  non-treatment is the basis for the state law damages he now seeks. County of Santa

5  Clara v. Atl. Richfield Co., 137 Cal.App.4th 292, 317 (Cal. Ct. App. 2006) ("Since a

6  cause of action accrues when the elements of the cause of action, including damage,

7  occur, the appreciable and actual harm that results in accrual must be harm of the

8  specific type that is recoverable as damages on that type of cause of action.") As noted,

9  Plaintiff need not be aware of all the harm that will result. Dyniewicz, 742 F.2d at 486.

10      Thus, even with the benefit of the discovery rule, Plaintiff's medical malpractice

11  claim was not timely presented.

## 2.   Failure to Summon Medical Care

13      State prison personnel have a statutory duty to summon medical care, and they

14  may be held liable if they know or have reason to know that a prisoner is in need of

15  immediate medical care, but they fail to take reasonable action to summon such care.[7]

16  Lucas v. County of Los Angeles, 47 Cal.App.4th 277, 288 (Cal. Ct. App. 1996);  Watson

17  v. State, 21 Cal.App.4th 836, 841 (Cal. Ct. App. 1993); Zeilman v. County of Kern, 168

18  Cal.App.3d 1174, 1185-86 (Cal. Ct. App. 1985).

19      To state such a claim the plaintiff "must establish three elements: (1) the public

20  employee knew or had reason to know of the need (2) for immediate medical care, and

21  (3) failed to reasonably summons such care." Jett v. Penner, 439 F.3d 1091, 1099 (9th

22  Cir. 2006). "Liability . . . is limited to serious and obvious medical conditions requiring

23  immediate care," Watson, 21 Cal.App.4th at 841, and the public employee does not

24  have "a duty to monitor the quality of care provided." Jett, 439 F.3d at 1099.

25      Plaintiff had emergency surgery on his left ankle on September 22, 2010, and by

27      [7] Cal. Gov't Code § 845.6.

28                    -14-

not later than October 11, 2010, he was aware of the attendant serious staph infection and ankle deterioration and displacement. (First Am. Compl. at ¶¶ 21-45.)

Accordingly, Plaintiff had reason to suspect facts supporting all elements of his failure to summon medical care claim, i.e., Defendant's actual or constructive knowledge of a need for immediate care of a serious and obvious condition, failure to summon such care and harm therefrom, by October 11, 2010 at the latest. This very harm is the basis for the state law damages he now seeks. County of Santa Clara, 137 Cal.App.4th at 317. As noted, In such a case, failure to appreciate the full extent of one's injuries or all the harm that may flow from them does not delay accrual. Dyniewicz, 742 F.2d at 486.

Even with the benefit of the discovery rule, Plaintiff's failure to summon medical care claim also was not timely presented.

## D.   Continuing Violation

Plaintiff argues the failures of Defendants Lopez, Arambula and Horton were a "continuing violation" that included ongoing failure to respond to his requests for post-operative orthopedic care, medication, and further surgeries, and continued until his release from KVSP incarceration on July 26, 2011.

Plaintiff cites to federal case law for the principle that a statute of limitations does not begin to run on a continuing wrong until the wrong is over and done with. Taylor v. Meirick, 712 F.2d 1112, 1118 (7th Cir. 1983), citing e.g., Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263, 295 (2d Cir.1979). This continuing violation doctrine is an equitable doctrine designed "to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort." Martin v. Woodford, 2010 WL 2773235, at *4, *5 (E.D. Cal.  2010), citing O'Loghlin v. County of Orange, 229 F.3d 871, 875 (9th Cir. 2000). To establish a continuing violation, a plaintiff must show "a series of related acts against a single individual . . . that . . . 'are related closely enough

to constitute a continuing violation.' " Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1480–81 (9th Cir. 1989), quoting Bruno v. Western Elec. Co., 829 F.2d 957, 961 (10th Cir. 1987). However, the mere continuing impact from a past violation is not actionable under the continuing violation doctrine. Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001), citing Grimes v. City and County of San Francisco, 951 F.2d 236, 238–39 (9th Cir. 1991).

California recognizes that in certain contexts, such as damage to public improvements, where there is alleged continuous and repeated damage, the limitations period does not begin to run until the situation has stabilized. Stonewall Ins. Co. v. City of Palos Verdes Estates, 46 Cal.App.4th 1810, 1843 (Cal. Ct. App. 1996). California also recognizes that "when an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." Hopar Dulce Hoear v. Community Development Com'n Of City Of Escondido 110 Cal.App.4th 1288, 1295 (Cal. Ct. App. 2003). This doctrine does not delay or toll the limitations period, but rather acknowledges the reality that actionable wrongs can be repeated and allows recovery for those wrongful acts that accrued within the statutory period.

No such continuous or repeated activity occurred, or is even alleged, here. The First Amended Complaint alleges that Defendant Arambula told Plaintiff in July 2010 that his request for emergency surgery was denied because he was too close to release from custody; Defendant Lopez denied his emergency surgery approximately one week following Plaintiff's July 19, 2010 visit to Defendant Paik; and Defendant Horton failed to immediately summon medical care on September 2, 2010. No facts are alleged that any of these actions continued, or were repeated, by these Defendants. Moreover, Plaintiff received emergency care on September 22, 2010.

Plaintiff provides no facts suggesting harmful continuing or repeated violations

1   by these Defendants, but instead focuses on the harmful effects of the time-barred

2   acts. Only the former are relevant for limitations purposes. Frost v. Diocese of San

3   Bernardino Education and Welfare Corporation for the Benefit of Saint Catherine of

4   Alexandria, et al., 302 F. App'x. 729, at **1 (9th Cir. 2008), citing Garcia v. Brockway,

5   526 F.3d 456, 462-63 (9th Cir. 2008).

6          Plaintiff should not be entitled to delay or toll accrual on the basis of continuing

7   violation.

8          **E.     VCGCB Acceptance of Claims**

9          Plaintiff argues the VCGCB accepted, on January 12, 2012, timely and untimely

10  claims he presented on December 30, 2011, and then rejected these claims by notice

11  dated February 24, 2012.[8]

12         The VCGCB notified Plaintiff on January 12, 2012 that "'[his] claim is being

13  accepted only to the extent it asserts allegations that arise from facts or events that

14  occurred during the six months prior to the date it was presented." (Opp'n to Mot. to

15  Dismiss at Ex. A.) The VCGCB did not accept untimely allegations, i.e., those arising

16  from facts or events occurring prior to June 30, 2011.

17         The state claims Plaintiff assets against Defendants Lopez, Arambula and

18  Horton arose from events occurring prior to June 30, 2011. These untimely claims were

19  not accepted by the VCGCB.

20         Nothing before the Court suggests Plaintiff requested late claim acceptance

21  pursuant to California Government Code Section 911.4. Even if Plaintiff had made a

22  late claim application, it was deemed denied when not acted upon within forty-five days

23  thereafter.[9]

24

25         [8] Opp'n to Mot.'s to Dismiss at Ex. "A", Ex. B. The Court takes judicial notice of these exhibits.

26  United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

27         [9] Cal. Gov't Code § 911.6(c).

28                                          -17-

Accordingly, the allegations in the First Amended Complaint were not timely presented or accepted as late claims.

### F.   Equitable Tolling

Plaintiff argues that the six month period within which to present his state claims is subject to equitable tolling until his release from KVSP on July 26, 2011. He asserts that he could not reasonably have been aware of state tort claim presentation requirements until he consulted with an attorney upon his release. And, further, that since he reasonably pursued prison administrative remedies alleging the same operative facts as contained in the First Amended Complaint, Defendants were not prejudiced in their investigation and defense by any alleged delay.

Under state law, estoppel arising because of knowledge held by the defendant entity is a species of waiver; where a public official may not waive a public right, he cannot be estopped from asserting that right. Kline v. San Francisco Unif. Sch. Dist., 40 Cal.App.2d 174, 177 (Cal. Ct. App. 1940).

Plaintiff offers no support for his argument that inmate administrative filings under the PLRA satisfy state claims presentation requirements. Nothing in the state claim presentation statute authorizes such a substitute for presentation of a written claim.[10] Plaintiff's citation to Addison v. State of California is not persuasive in this regard in that the Plaintiffs in Addison did timely present their state claims. See Addison v. State of California, 21 Cal.3d 313, 317 (Cal. 1978).

Nor does the First Amended Complaint include facts showing a properly exhausted PLRA inmate claim raising the claims made here, so it can not be said that Plaintiff substantially complied with requirements of the state tort claims filing statute.[11] See Loehr v. Ventura County Community College Dist., 147 Cal.App.3d 1071, 1085

---

[10] Cal. Gov't Code § 915.

[11] Cal. Gov't Code § 910.

-18-

(Cal. Ct. App. 1983).

Estoppel, as a bar to a public entity's assertion of the defense of noncompliance with claim presentation requirements, most commonly results from misleading statements about the need for or advisability of a claim, but may also be established by acts of intimidation or violence that are intended to prevent the filing of a claim. K.J. v. Arcadia Unified School Dist, 172 Cal.App.4th 1229, 1240 (Cal. Ct. App. 2009). A plaintiff may plead equitable estoppel against the government when: (1) the party to be estopped is appraised of facts; (2) it intends that its conduct be acted upon; (3) the estopping party was ignorant of true state of facts; (4) the estopping party relies on other party's conduct to his detriment; and (5) the estopping party demonstrates that injury to his personal interests if government is not estopped exceeds injury to public interest if government is estopped. Ovando v. City of Los Angeles, 92 F.Supp.2d 1011, 1024, (C.D. Cal. 2000).

Plaintiff does not attribute to Defendants any acts affirmatively misleading or deterring him from timely claim presentation. His ignorance of the law does not alone create excuse or estoppel in connection with a late claim filing. Tyus v. City of Los Angeles, 74 Cal.App.3d 667, 673 (Cal. Ct. App. 1977).

Accordingly, nothing before the Court suggests Defendants are equitably denied the claims presentation defense, or equitable tolling of the state claim presentation period.

### G.    Leave to Amend

Plaintiff argues for leave to amend any claims dismissed.

Leave to amend need not be afforded where it is absolutely clear that the deficiencies of the pleading could not be cured by amendment. Franklin v. Murphy, 745 F.2d 1221, 1228 n.9 (9th Cir. 1984); see also Cato v. United States, 70 F.3d 1103, 1106–07 (9th Cir. 1995) (dismissal without leave to amend is not an abuse of discretion

1    where amendment would be futile).

2        The claims dismissed hereunder are barred by immunity and untimeliness and

3    not susceptible to cure upon amendment.

4        Plaintiff should not be granted leave to amend claims dismissed.

5    **VI.**    **CONCLUSIONS AND RECOMMENDATIONS**

6        Defendant CDCR is entitled to Eleventh Amendment immunity from federal suit

7    and should be dismissed from this action. The instant motion of Defendant Lopez is not

8    a successive motion barred under Fed. R. Civ. P. 12(g)(2). Plaintiff's state law claims

9    were not timely presented and can not be litigated.[12]

10        Accordingly, for the reasons stated above the Court RECOMMENDS that the

11    motion for partial dismissal brought by Defendants CDCR and Lopez (ECF No. 15) and

12    the motion for partial dismissal brought by Defendants Arambula and Horton (ECF No.

13    27) be GRANTED such that Defendant CDCR be DISMISSED from this action and the

14    state law claims asserted against Defendants Lopez, Arambula and Horton in the First

15    Amended Complaint be DISMISSED without prejudice. Plaintiff may proceed on his

16    Eighth Amendment claim against Defendants Lopez, Horton, Arambula, Paik and

17    DOES 1-50, against Defendants Paik and Pacific Orthopedic on his state law medical

18    malpractice claim, and against Defendants Paik and DOES 1-50 on his state law failure

19    to summon medical care claim.

20    ///////

21    ///////

22    ///////

23    ///////

24    ///////

25

26        [12] Cal. Gov't Code § 945.4; "Failure to comply with the claim presentation requirements is fatal to later cause of action." Utility Audit Co. v. City of Los Angeles, 112 Cal.App.4th 950, 960 (Cal. Ct. App.

27    2003).

28            -20-

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   February 8, 2013        /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE