# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR GUNDY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, et al.,<br><br>　　　　Defendants. | CASE No. 1:12-cv-01020-LJO-MJS (PC)<br><br>**ORDER DENYING (1) CROSS-MOTIONS TO STRIKE, and (2) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 90, 93, 96)**<br><br>**CASE TO REMAIN OPEN** |

## I.　PROCEDURAL HISTORY

Plaintiff Taylor Gundy, a former state prisoner, initiated this action on June 21, 2012 pursuant to 42 U.S.C. § 1983. This matter proceeds on a medical indifference claim against Defendant Spaeth M.D., Chief Physician and Surgeon at Kern Valley State Prison ("KVSP").

Before the Court are Defendant's motion for summary judgment, Plaintiff's motion to strike Defendant's motion and Defendant's motion to strike excerpted deposition testimony offered by Plaintiff in opposition to summary judgment. Plaintiff

filed opposition to the motion for summary judgment. Defendant replied. The matters were taken under submission. (ECF No. 99.) The Court is ready to rule.

## II.     FACTUAL BACKGROUND

Plaintiff claims that while he was incarcerated at KVSP the Defendant, who reviewed prison physician requests for specialty medical services ("RFS"), initially denied and delayed surgery requested by Plaintiff's treating physician, Dr. Kandkhorova, and recommended by his orthopedic surgeon, Dr. Paik. The surgery was to treat internal fixation hardware in his left ankle that erupted through the skin during June 2010.

Defendant reviewed three RFS's submitted by Dr. Kandkhorova: a May 11, 2010 RFS seeking orthopedic consultation which Defendant approved, a July 8, 2010 RFS seeking surgery which Defendant denied, and an August 19, 2010 RFS seeking surgery which Defendant approved conditioned on further orthopedic consultation prior to surgery.

Surgery on Plaintiff's ankle took place on September 22, 2010.

Plaintiff claims delaying surgery caused infection and osteomyelitis that necessitated amputation of his left ankle joint, resulting in disfigurement and disability.

## III.    LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). While the Court may consider other materials in the record not cited to by the

parties, it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**IV.    ARGUMENTS**

    **A.    Defendant**

Defendant's arguments are summarized as follows:

California Department of Corrections and Rehabilitation ("CDCR") procedure limits Defendant's review of a treating physician RFS to the RFS itself and the results of a resource utilization computer program called "InterQual" which analyzes patient information against a database of clinical-decision support criteria and alternatives and makes a recommendation on whether to refer the patient for outside care.

Defendant appropriately denied the July 8, 2010 RFS, which was the initial request for surgery, because: it did not meet InterQual criteria for approval, Plaintiff had

3

1  not been seen by a specialist, and there was no indication Plaintiff was suffering
2  infection or complications. Plaintiff was not at risk of serious harm. Defendant contends
3  her opinion that surgery was not then appropriate is consistent with that reached by
4  Plaintiff's orthopedic specialist, Dr. Paik, following his initial examination of Plaintiff on
5  July 19, 2010.

6        Defendant appropriately approved the August 19, 2010 RFS, the second request
7  for surgery, subject to additional evaluation by orthopedist Dr. Paik. Defendant felt the
8  additional pre-surgical consultation was necessary because treating physician Dr.
9  Kandkhorova advised Plaintiff's wound was not healing.

10       Dr. Paik's surgery on the ankle and Plaintiff's recovery from surgery went well.

11 **B.      Plaintiff**

12       In response, Plaintiff argues essentially as follows:

13       Defendant's motion is procedurally deficient because it was filed four days after
14 the deadline set by the Court. The motion is untimely and should be stricken.

15       InterQual's alleged denial of the RFS is not admissible evidence.

16       Defendant did not exercise professional judgment and responsibility when she
17 denied the July 8th RFS seeking approval for surgery. Instead Defendant deferred to
18 InterQual's recommendation to deny surgery even though she knew the treating
19 physician recommended otherwise. Defendant acted without reviewing Plaintiff's
20 medical records or examining Plaintiff or consulting with Plaintiff's medical providers.

21       Contradictions in Defendant's testimony regarding the documents typically
22 reviewed in the RFS process and those she reviewed here create a dispute of fact as to
23 whether Defendant intentionally delayed surgery.

24       Defendant's delay in approving surgery may have been motivated by Plaintiff's
25 impending release.[1]

26       The delay in surgery allowed Plaintiff's condition to progressively worsen and

27
28 [1] Plaintiff entered KVSP on February 10, 2010 and was released on July 26, 2011. (ECF No. 94 at 2:15-16.)

4

caused further injury.

**V.    UNDISPUTED FACTS**

Defendant, as KVSP Chief Physician and Surgeon, reviewed RFS submittals by KVSP medical staff along with InterQual's recommendation and either approved or denied the RFS. (Joint Statement of Undisputed Facts, "JSF", 16.)

Generally a specialist would evaluate a patient before surgery would be approved. (JSF 19.)

Defendant's only involvement with Plaintiff was review of Dr. Kandkhorova's RFS's dated May 11, 2010, July 8, 2010 and August 19, 2010 along with InterQual's recommendations. (JSF 20.)

Defendant had the authority to approve or deny each RFS. (JSF 16.)

On July 9, 2010, Defendant denied the July 8, 2010 RFS which was the initial request for surgery because it did not meet InterQual criteria, (JSF 38); Defendant did this without reviewing medical files or examining Plaintiff or contacting the treating physician, Dr. Kandkhorova, who submitted the request. (JSF 38-39.)

Plaintiff was first seen by orthopedic specialist, Dr. Paik, on July 19, 2010. (JSF 41.)

On August 20, 2010, Defendant approved the August 19, 2010 RFS which was the second request for surgery, conditioning approval on further pre-surgical consultation with Dr. Paik because of a "change to wound." (JSF 44.)

Plaintiff was seen for the second time by Dr. Paik on August 30, 2010. (JSF 45.)

Dr. Paik operated on Plaintiff's ankle on September 22, 2010. (JSF 48.)

**VI.   MOTONS TO STRIKE**

**A.    Legal Standard**

"The Court may strike from a pleading an insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) is limited to striking from a pleading only those specific matters which are provided for in the rule. *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973–75 (9th Cir. 2010).

1    A movant must show that the allegations are devoid of merit, unworthy of any
2 consideration, and unduly prejudicial. *Facility Wizard Software, Inc. v. Southeastern*
3 *Technical Services, LLC*, 647 F.Supp.2d 938, 942 (N.D. Ill. 2009).

4    A district court has the inherent power to strike a party's submissions other than
5 pleadings in order to enforce its rules for management of litigation. See, e.g., *Spurlock*
6 *v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir. 1995) (court has "inherent power over the
7 administration of its business").

8    A motion to strike is generally disfavored. *Heller Fin., Inc. v. Midwhey Powder*
9 *Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

10   **B.   Discussion**

11        **1.   Plaintiff's Motion to Strike Summary Judgment Motion**

12   Plaintiff may not use Rule 12(f) to attack Defendant's motion. Matters outside the
13 pleadings are normally not considered on a motion to strike. *Custom Foam Works, Inc.*
14 *v. Hydrotech Systems, Ltd.*, 2010 WL 4386710, *1 (S.D. Ill. October 29, 2010) (motions
15 to strike pursuant to Rule 12(f) are appropriate only to strike matters contained in the
16 pleadings). Defendant's motion is not a pleading.

17   Even if the motion to strike were procedurally proper, it is not substantively so.
18 Plaintiff does not state facts demonstrating Defendant's motion is untimely under the
19 Court's January 29, 2014 order. (ECF No. 76.) That order granted Plaintiff's request to
20 add Dr. Spaeth as a Defendant and allowed thirty days following Spaeth's deposition to
21 amend Defendants' then pending motion for summary judgment.

22   Plaintiff does not make a showing based in competent evidence that the instant
23 motion is untimely under the January 29th order.

24   Even if the motion was filed four days late, Plaintiff has not shown such a minor
25 delay impacts case management or prejudices Plaintiff.

26   The motion lacks merit.

27 //
28 //

**2.     Defendant's Motion to Strike "Unauthenticated" Deposition Excerpts**

Defendant asserts that only admissible evidence is considered on a summary judgment motion, *Orr v Bank of American, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. P. 56(e), and that the Ninth Circuit Court of Appeals ("Ninth Circuit") requires that excerpts of deposition transcript be authenticated by the court reporter's certification that the transcript is a true and correct record. *Orr*, 285 F.3d at 774. According to Defendant, the affidavit of Plaintiff's counsel alone is insufficient. *Id.*

However, the Ninth Circuit later clarified in *Fraser v. Goodale* that it is the admissibility of the contents of evidence, not its form, that determines whether evidence is admissible for purposes of *avoiding* summary judgment. 342 F.3d 1032 (9th Cir. 2003); see also *Quanta Indem. Co., v. Amberwood Development Inc.*, 2014 WL 1246144, at *2 (D. Ariz. March 26, 2014) (non-moving party may oppose the motion with evidence whose content alone is admissible); Fed.R.Civ.P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Celotex,* 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

On motion for summary judgment the content of documents "may be authenticated not only through personal knowledge . . . but also by any manner permitted by Fed. R. Evid. 901(b) or 902." *Holmes v. Home Depot USA, Inc.,* No. 1:06–cv–01527–SMS, 2008 WL 4966098, *8 (E.D. Cal. Nov. 20, 2008). Documents may be authenticated by "[d]istinctive characteristics and the like," including "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Fed. R. Evid. 901(b)(4).

Here Defendant's motion is procedurally deficient for the same reasons Plaintiff's motion is deficient.

Additionally, Plaintiff has made a prima facie showing of authenticity of the

contents of the deposition extracts considering counsel's affidavit and the contents, nature, and appearance of the documents submitted, as well as explicit references to the deponents within the documents. See E.*W. French & Sons, Inc., v. Gen'l Portland Inc.*, 885 F.2d 1392, 1398 (9th Cir. 1989); *Hill v. Opus Corp.*, 464 B.R. 361, 368 (C.D. Cal. 2011); Federal Rule of Evidence 901(b).

Defendant has not demonstrated Plaintiff's proferred deposition extracts are inadmissible for purposes of avoiding summary judgment. See *Renteria v. Oyarzun,* CV No. 05–392–BR, 2007 WL 1229418, *2 (D.Or. Apr. 23, 2007) (in the absence of evidence showing that the excerpts were fraudulent, deposition transcripts that lacked a copy of the court reporter's certification but did include the cover page identifying the deponent, the action and the time and place of the deposition were sufficiently authenticated under Rule 901(b)(4)); *Prineville Sawmill Co. v. Longview Fibre Co.,* CV No. 01–1073–BR, 2002 WL 31974434, *11 (D.Or. Sept. 23, 2002), reversed on other grounds, 97 Fed.Appx. 133 (9th Cir. 2004) (in the absence of evidence showing that they were fraudulent, deposition excerpts that included the cover page of the deposition identifying the deponent, the action and the time and place of the deposition and that were attached to an affidavit in which counsel stated that the excerpts were true copies of the transcripts provided by the court reporter who took the deposition were sufficiently authenticated under Rule 901(b)(4)); *Kenney v. Paderes,* No. Civ. 00–00315 EMK, 2002 WL 31863882, *2 (D. Haw. Aug. 21, 2002) ("Although the transcripts do not contain the reporter's signed certificate, the cover page of the deposition transcripts of both Dr. Allen and Dr. Lauer provide the name of the deponent, the case name and civil number, and indicates that it is a certified copy . . . . Furthermore, by reviewing its contents, this Court is able to make the determination that the deposition transcripts are authenticated. Fed. R. Evid. 901(b)(4).").

Defendant's motion to strike deposition extracts offered in opposition to the summary judgment motion lacks merit.

## VII. EVIDENTIARY CHALLENGES

The parties have interposed objections to the evidence relied upon by opposing counsel (see Plaintiff's Response to Defendant's Separate Statement Facts, ECF No. 93-4; Plaintiff's Objections to Defendant Martha Spaeth's Declaration, ECF Nol. 93-3; Defendant's Response to Plaintiff's Separate Statement of Facts, ECF No. 96-1; Defendant's Evidentiary Objections and Motion to Strike, ECF No. 96-3).

The Court declines to reach Plaintiff's objections given the disposition hereunder.

The Court rules as follows on Defendant's objections:[2]

Defendant's objection to Plaintiff's Separate Statement Fact No. 52, on grounds there is no evidence in support, is SUSTAINED;

Defendant's objections to Plaintiff's Separate Statement Facts No. 56 and 80 on hearsay grounds are SUSTAINED;

Defendant's objections to Plaintiff's Separate Statement Facts No. 66 and 74 on grounds mischaracterizes witness's testimony are SUSTAINED;

Defendant's objections predicated on her motion to strike are, for reasons stated above, OVERRULED;

Defendant's objections on grounds of relevance are "duplicative of the summary judgment standard itself because the Court necessarily considers only relevant evidence in its ruling," *Quanta Indem. Co.*, at *3, citing *Burch v. Regents of the Univ. of Cal.*, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) and because Federal Rule of Evidence 403 provides for the exclusion of evidence that may "mislead the *jury*," not the Court, *see* Fed. R. Evid. 403; *see also Bafford v. Travelers Cas. Ins. Co. of Am.*, 2012 WL 5465851, at *8 (E.D. Cal. Nov.8, 2012), and are OVERRULED.

## VIII. MEDICAL INDIFFERENCE

### A. Legal Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment,

---

[2] The Court expresses no opinion on Plaintiff's objections.

an inmate must show deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This requires Plaintiff to show (1) "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096, quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Where a delay in treatment is alleged, the plaintiff must show it led to further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096.

A difference of opinion among health care professionals is not a basis for deliberate indifference unless the treatment chosen is medically unacceptable and in conscious disregard of an excessive risk to the prisoner's health. See *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

**B.     Discussion**

    1.     Serious Medical Need

Defendant maintains that the information she reviewed did not show Plaintiff had a serious need for medical attention. She notes the July 8th RFS did not indicate Plaintiff was suffering any infection or complication. (Defendant Separate Statement Fact(s), "DSF", 26-29.)

Plaintiff responds that the serious nature of his condition was obvious on the face of the July 8th RFS because it stated there was an exposed surgical screw and an

exposed surgical screw may cause osteomyelitis. (Plaintiff Separate Statement Fact(s), "PSF", 89.) Additionally, Plaintiff's condition could be expected to cause and did cause chronic pain during the period of delay. (PSF 90.)

The Court finds a dispute of fact whether Defendant was aware Plaintiff's condition presented serious risk of harm. The July 8th RFS was the treating physician's request for an urgent surgical response to exposed surgical hardware, a condition then under treatment. (JSF 34-36; PSF 62.) The urgency of the request, the nature of injury with its potential for complications and pain, and the treating physician's opinion that surgery was required all suggest Defendant was on notice of a serious risk of harm. See *Scarver v. Litscher*, 371 F.Supp.2d 986, 999 (W.D. Wis. 2005), citing *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) ("serious medical needs" encompass conditions that are life-threatening or that carry risks of permanent serious impairment if left untreated, those that result in needless pain and suffering when treatment is withheld and those that have been diagnosed by a physician as mandating treatment). An obvious risk may support an inference Defendant knew of the risk. *Watson v. Sisto*, 2011 WL 5155175, at *21 (E.D. Cal. October 28, 2011), citing *Farmer*, 511 U.S. at 840-42.

        2.     July 8th RFS Denying Surgery

Defendant maintains her denial of the July 8th initial surgery request was consistent with CDCR requirements and medically appropriate because: the RFS did not meet InterQual criteria for approval (DSF 33, 38, 43), lacked sufficient information (DSF 24), did not show prior evaluation by an orthopedic specialist (DSF 12-13, 26, 35-36), and did not show Plaintiff suffered any complications or infection. (DSF 27-28.) Defendant claims it was medically reasonable to deny an RFS that lacks sufficient information. (DSF 15.)

Plaintiff counters that Defendant did not exercise medical judgment in denying surgery because: she failed to identify and acquire the missing InterQual information, failed to review medical records, and failed to contact the treating physician regarding

11

the recommendation and opinion that surgery was urgently required. (PSF 63-64.)

The Court finds a dispute of fact whether Defendant's denial of the July 8th RFS was with knowing disregard of Plaintiff's need for surgery. Defendant's own expert, Dr. Barnett, suggests InterQual is but a factor to consider when exercising medical judgment, training and knowledge. (Barnett Decl. at ¶ 8.) Defendant did not take action to resolve the InterQual shortcoming (DSF 37) and does not recall what InterQual told her regarding objective and subjective findings against surgery. (PSF 64.) Significantly, Defendant states she did not understand what the treating physician meant by stating the screw "came out" from the skin. (DSF 31-32.) Yet she apparently made no attempt to get clarification. Defendant's medical expert suggests denying surgery was reasonable given the information before Defendant. (DSF 37.) However, the treating physician's opinion and urgent recommendation in the RFS is evidence otherwise. (Def. Ex. 3.) A failure to competently treat a serious medical condition, even if some treatment if prescribed, may constitute deliberate indifference. *Watson*, 2011 WL 5155175, at *21 (E.D. Cal. October 28, 2011), citing *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). There remain material questions of fact whether Defendant's denial of surgery shows knowing disregard for Plaintiff's serious medical needs. (PSF 65-67.) See e.g., *Ortiz,* 884 F.2d at 1314 (medical staff's disregard of known complications without examination may be sufficient to show medical indifference).

### 3. August 19, 2010 RFS Conditionally Approving Surgery

Defendant maintains her August 20, 2010 approval of surgery conditioned upon further orthopedic consultation with Dr. Paik was medically appropriate. She says she was unaware of Dr. Paik's July 19th findings and recommendations. She conditioned the surgery approval upon subsequent consultation with Dr. Paik "because of change to wound." (JSF 44.) She did this because the treating physician advised her Plaintiff's wound was not healing. (DSF 45.)

Plaintiff contends this further delay was medically unacceptable. Orthopedic specialist, Dr. Paik, examined Plaintiff on July 19, 2010 (JSF 41), found the wound was

infected, recommended removal of the ankle hardware and treatment with antibiotics, and noted all this on the face of the May 11, 2010 RFS. (PSF 70-71, 91.) Prison medical staff likewise documented Dr. Paik's findings and recommendations in Plaintiff's medical file. (Pl. Ex. 18.) Plaintiff points out that Defendant imposed the further consultation requirement without contacting Dr. Paik to ascertain whether any further consultation was necessary (PSF 76-77), and that had Defendant contacted Dr. Paik, she would have discovered Dr. Paik disagreed with delaying the surgery he previously recommended on July 19th. (PSF 70-71, 75  81; Paik Dep. at 36:22-37:1.)

Defendant replies that Dr. Paik's patient evaluation report of his July 19, 2010 examination differs from what he wrote that day on the RFS. That the evaluation report recommended antibiotic treatment holding surgery as an option. (DSF 39-42.) This, according to Defendant, supports the further consultation she ordered when she approved the August 19th RFS. Defendant also notes Dr. Paik's August 30, 2010 progress notes did not characterize the surgery as an emergency (DSF 46-47), suggesting delay for further consultation was appropriate.

The Court finds a factual dispute underlying whether Defendant's August 19th surgery approval conditioned on further consultation was with knowing disregarded of the recommendation of the specialist, Dr. Paik, and delayed necessary surgery. See *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012) (doctor's awareness of need for treatment followed by his unnecessary delay in implementing the prescribed treatment sufficient to plead deliberate indifference); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (decision of non-treating, non-specialist physicians to repeatedly deny recommended surgical treatment may be medically unacceptable under all the circumstances). Dr. Paik testified that on July 19, 2010 he found the wound infected, that osteomyelitis had developed, and that surgery should be performed as soon as possible. (Def. Ex. 6; Paik Dep. at 25-28.) The August 19, 2010 RFS which Defendant reviewed made express reference to Dr. Paik's July 19th findings and recommendations. (Pl. Ex. 5.)

Defendant's suggestion that delaying surgery might avoid osteomyelitis (DSF 44) appears to ignore Dr. Paik's July 19th finding that osteomyelitis already was present. Similarly, Defendant's suggestion she ordered the further consultation because the wound was not healing (DFS 45) disregards that Dr. Paik was aware as early as July 19th that the wound was not healing. (Def. Ex. 6.) Dr. Paik testified the wound in fact would not heal until the hardware was surgically removed. (Paik Dep. at 35:8-12.)

Defendant's argument, that Dr. Paik wrote conflicting findings and recommendations following his July 19th examination, does not support summary judgment. These issues bear on weight accorded evidence and credibility of a witness and cannot be resolved on summary judgment. See *Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (in judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (the court must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment).

### 4. Harm from Delay

Defendant's assertion Plaintiff was not harmed by delay in surgery, that he responded to antibiotics and his wound healed well (DSF 49-50) and that he could walk within a couple months (DSF 50-51) is countered by Plaintiff's showing that Dr. Paik found progressing osteomyelitis during his August 30, 2010 re-examination. Dr. Paik has testified that osteomyelitis is never completely eradicated. (Paik Dep. 48:23-25). Dr. Paik, after his August 30th re-examination (again) recommended removal of ankle hardware as well as treatment for the developing bone infection. (JSF 46.)

The Court finds a factual dispute underlying whether alleged delay in surgery caused further harm. Dr. Paik opined Plaintiff's condition worsened during the period of delay (PSF 78) and threatened loss of the leg. (PSF 81.) See *Wilhelm*, 680 F.3d at 1123 (unnecessary delay in implementing the prescribed treatment sufficient to plead

deliberate indifference).

## IX. QUALIFIED IMMUNITY

### A. Legal Standard

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341(1986). Therefore, "[i]f the [defendant's] mistake as to what the law requires is reasonable . . . the [defendant] is entitled to the immunity defense." *Saucier v. Katz*, 533 U.S. 194, 205 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223, 227 (2009); *Estate of Ford v. Ramirez–Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244.

### B. Discussion

Where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. *Liston v. County of Riverside*, 120 F.3d 965, 978 (9th Cir. 1997); *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1997); *Alexander v. City of San Francisco*, 29 F.3d 1355, 1364 (9th Cir.1994); *ACT UP!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). Such is the case here, for the reasons discussed above.

Accordingly, Defendant's qualified immunity claim cannot be resolved on summary judgment.

## X. CONCLUSIONS AND ORDER

Parties' cross motions to strike are procedurally and substantively deficient. Plaintiff's medical indifference claim remains in dispute. Qualified immunity cannot be resolved given the underlying factual dispute.

Accordingly, it is HEREBY ORDERED that:

1.    Plaintiff's motion to strike (ECF No. 93) is DENIED,

2.    Defendant's motion to strike (ECF No. 96) is DENIED,

3.    Defendant's motion for summary judgment (ECF No. 90) is DENIED, and

4.    This case shall remain open.

IT IS SO ORDERED.

Dated: **April 29, 2014**　　　　　　　　　　**/s/ Lawrence J. O'Neill**
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE